# Constitutionality of Enrolled Bill Restricting the Withdrawal of Public Land for National Defense

The constitutionality of an enrolled bill providing that withdrawals of public lands for national defense purposes shall not become effective until approved by act of Congress involves a question as to the relationship between the President's constitutional powers as Commander in Chief and the constitutional authority of Congress over the public lands.

The exception that would make the enrolled bill's restrictions inapplicable in time of national emergency declared by the President may be adequate to resolve whatever doubt there may be as to the constitutionality of the bill in favor of a conclusion that it makes sufficient provision for the exercise in time of national emergency of the President's powers as Commander in Chief.

February 24, 1958

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

As requested in your memorandum of February 20, 1958, there are submitted the following comments on this enrolled bill "[t]o provide that withdrawals, reservations, or restrictions of more than five thousand acres of public lands of the United States for certain purposes shall not become effective until approved by Act of Congress, and for other purposes." H.R. 5538, 85th Cong. (1957).

The bill presents a constitutional question which is not entirely free of doubt and to which it may be advisable to invite attention. It concerns the relationship between the powers of the President as Commander in Chief and the authority of Congress over the public lands.

Section 1 of the bill would provide that, notwithstanding any other provisions of law, except in time of war or national emergency, hereafter declared by the President or by Congress on and after the date that the bill becomes law, its provisions shall apply to the withdrawal and reservation for, restriction of, and utilization by, the Department of Defense for defense purposes of the public lands of the United States, including those in the Territories of Alaska and Hawaii. There is a proviso to section 1 concerning the applicability of the bill to various classes of federal lands and waters. I should prefer not to express any views respecting the matters referred to in the first three subparagraphs in that proviso until I have the benefit of the comments of the Lands Division.

The fourth subparagraph in that proviso would except from sections 1, 2, and 3 of the bill (a) those reservations or withdrawals which expired due to the ending of the unlimited national emergency of May 27, 1941, and which have since been and are now used by the military departments with the concurrence of the Department of the Interior, and (b) the withdrawals of public lands for three specified military facilities. The President in Proclamation 2487, dated May 27, 1941, proclaimed the existence of an unlimited national emergency, 55 Stat. 1647, 3 C.F.R 234 (1938–1943), and in Proclamation 2974, dated April 28, 1952,

declared that such emergency was terminated that day upon the entry into force of the Treaty of Peace with Japan, 66 Stat. C31, 3 C.F.R. 30 (Supp. 1952).[1]

By reference to the dates of these proclamations there can be ascertained the otherwise unspecified military projects and facilities on reservations or withdrawals of public lands which would not be subject to sections 1, 2, and 3 of the bill. According to the conference report on the bill, the fourth proviso would exempt military projects and facilities on 19 specific areas of public lands from the requirement that Congress approve public land withdrawals in excess of 5,000 acres. H.R. Rep. No. 85-1347, at 3 (1958).

Section 2 of the bill would provide that no public land, water, or land and water area shall, except by Act of Congress, hereafter be (1) withdrawn from public entry for the use of the Department of Defense for defense purposes; (2) reserved for such use; or (3) restricted from operation of the mineral leasing provisions of the Outer Continental Shelf Lands Act, Pub. L. No. 83-212, 67 Stat. 462 (1953) (codified at 43 U.S.C. §§ 1331–1343 (1958)), if such actions would result in the withdrawal, reservation, or restriction of more than five thousand acres in the aggregate for any one defense project or facility of the Department of Defense.

Sections 3 to 6, inclusive, of the bill concern matters as to which I prefer not to express any views until I have the benefit of any comments of the Criminal and Lands Division. Accordingly, I now turn to the constitutional question.

Article II, Section 2, Clause 1 of the Constitution provides in pertinent part as follows:

> The President shall be Commander in Chief of the Army and Navy of the United States.

Article IV, Section 3, Clause 2 provides in relevant part as follows:

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory and other Property belonging to the United States.

In his memorandum of July 12, 1956,[*] commenting on H.R. 10362, 84th Cong., and several other bills for the same general purposes, Assistant Attorney General Rankin expressed the opinion that sections 1 and 2 thereof presented a serious constitutional question which the courts have never passed on in regard to the

---

[1] This latter proclamation also provided that nothing therein shall be construed to affect Proclamation 2914, dated December 16, 1950, proclaiming that, because of communist imperialism, there exists a national emergency, requiring the strengthening of the national defenses, and the continuance of certain World War II measures respecting the use of certain property. 64 Stat. A454, A455, 3 C.F.R. 99 (1949–1953).

[*] Editor's Note: That memorandum is included earlier in this volume (*Constitutionality of Pending Bills Restricting the Withdrawal of Public Land for National Defense*, 1 Op. O.L.C. Supp. 163 (July 12, 1956)).

President's power as Commander in Chief. He recommended that the Department report that it was opposed to section 1 and 2 of those bills as imposing an unwarranted restriction upon the President's power to use the public domain for national defense purposes, and as presenting a serious question regarding an unconstitutional restriction on the President's powers as Commander in Chief, Dep't of Justice File No. 90-1-01-65. It does not appear that the Department did so.

The judicial decisions and opinions of the Attorney General to which Mr. Rankin referred generally concern the President's powers as Commander in Chief in time of war in which the United States is a belligerent, or of national emergency because of the existence of a state of war between other governments. It may be noted that Mr. Rankin observed that the decisions have not made a clear demarcation of the boundaries of such powers.

Mr. Rankin's memorandum does not, however, refer to the majority per curiam opinion, in which Justice Reed concurred, that under Article IV, Section 3, Clause 2 of the Constitution the power of Congress over the public lands is "without limitation," *Alabama v. Texas*, 347 U.S. 272, 274 (1954) (per curiam), and the earlier decisions cited therein, including *United States v. Midwest Oil Co.*, 236 U.S. 459, 474 (1915). The legislative reports on this bill show that these are among the decisions on which Congress relied to support the constitutionality of the bill. *See* S. Rep. No. 85-857, at 10 (1957); H.R. Rep. No. 85-215, at 9 (1957).

It may be noted that the questions in *Alabama v. Texas* did not involve the President's power as Commander in Chief. Nevertheless, the views of a majority of the Court are expressed in such absolute terms as to make one reluctant to state that the bill clearly infringes upon the President's constitutional powers as Commander in Chief.

In any views that the Department may submit on the bill, it would seem to be appropriate, however, to point out that it involves a question as to relationship between the President's constitutional powers as Commander in Chief, on the one hand, and the constitutional authority of Congress over the public lands, on the other hand. If so, it is suggested that attention also be invited to the exception in the bill, which would make its restrictions on withdrawal or reservation of public lands for defense purposes inapplicable in time of national emergency hereafter declared *inter alia* by the President. This exception may be adequate to resolve whatever doubt there may be as to the constitutionality of the bill in favor of a conclusion that it makes sufficient provision for the exercise in time of national emergency of the President's powers as Commander in Chief.

Finally, it may be noted that the bill does not contain a separability provision. There are returned the attachments to your memorandum.

MALCOLM R. WILKEY
*Assistant Attorney General*
*Office of Legal Counsel*